## Wolleshlare *versus* Searles *et al.*

*Notice to holder of note to sue principal, what is sufficient.*

1. Where a surety claims to be discharged from liability upon a note by reason of notice to the holder to sue the principal debtor, the proof of the notice which raises an equitable duty in the holder in favour of the surety, for the neglect of which to his injury he is discharged, is the preliminary evidence to show that duty, and to introduce evidence of its violation : and if that notice is not clearly proven, further evidence is unnecessary, and the holder is entitled to recover.

2. The notice and the evidence of it should be so clear and distinct, that the meaning of the surety can be at once apprehended without explanation or argument.

3. In an action against a surety where the witness relied on to prove notice, did not testify clearly whether it applied to the note in suit or other notes held by an attorney in fact of the holder, the proof of notice was not sufficient: and the instruction of the court to the jury that the notice was insufficient in law, and that they should find a verdict for the plaintiffs, was not error.

ERROR to the Common Pleas of *Northampton county*.

This was an action on the case brought by Frederick Searles, Parmelia Beard, Esther Searles, John Everhard and Thryza his wife, in right of said Thryza, heirs of Elizabeth Searles, deceased, against John Wolleshlare. The plaintiff declared in *assumpsit* on a promissory note, dated Lower Mount Bethel, March 23d 1839, for $17.50, payable to the heirs of the estate of Elizabeth Searles at her death, and signed by John Johnson, attorney, and John Wolleshlare. On the trial the plaintiff gave in evidence the note declared on, proving the death of Mrs. Searles, and that the plaintiffs were her heirs; and rested.

The defence was two-fold :

1. That the defendant being but a surety, the plaintiffs had the means of satisfaction within their control, but refused to avail themselves of them, and allowed them to pass out of their reach, by means of which they lost their debt.

2. That the defendant notified the plaintiffs to collect the note in suit from Johnson the principal debtor, and accompanied the notice by the declaration that he would no longer be responsible on the note, and that the plaintiffs failed to comply with this notice and in consequence lost their debt.

The evidence relied on in support of this defence was as follows :—

Jesse Wagner, a witness produced by defendant, testified thus :—" I knew John Johnson ; he is now dead ; at and before the time of his death he lived at Martin's Creek, Northampton county ; he died the same year that Mrs. Searles did, in the fall or winter following ; I think he had a store at Martin's Creek ; I think he was a brother of Mrs. Searles ; I was present at a

[Wolleshlare *v.* Searles *et al.*]

meeting some weeks after Mrs. Searles's death when Wolleshlare and the heirs were present; the meeting was at Everhard's house; it was two, three, or four weeks after Mrs. Searles' death; they met there and settled with a Mr. Troxell for funeral expenses, things got out of his store; they paid Mr. Everhard I think for his trouble in taking care of Mrs. Searles during her sickness; Mr. Johnson had some $20 of interest money left that came due that first of April preceding, after paying these expenses; some one asked Johnson whether that was sufficient to pay him for his trouble in taking care of the old lady's money; he said it was; this interest money was in his hands; he had not paid it over; he was her trustee or agent as I understood it; they were there I should think at least three hours; a note on which Wolleshlare was security for Johnson to the old lady was spoken of; I think the amount of this note was something like $800; Wolleshlare said he was security on such a note; something was said as to how that money was invested; Mr. Christian Butz had something like $525 I should think; it was said Johnson held a note against him for the amount; there was one note against Wolleshlare for $125 or $150; there was another note against William Johnson for $100 I think; I knew Christian Butz by sight and reputation; he lived some three miles from that place; he was reputed to be a man of considerable wealth; I couldn't say what William Johnston was reputed to be worth except that he was a man in moderate circumstances; he was reputed to be able to pay his debts; Wolleshlare was reputed to be well able to pay his debts; they were all reputed to be solvent and responsible persons; at least I knew nothing to the contrary. Wolleshlare requested and urged the heirs to take these notes. Johnson expressed no particular unwillingness to give up these notes; Wolleshlare urged them to have these notes transferred to themselves or have the money collected; Johnson said there would be some difficulty in so doing, but if they wished it he wouldn't object. The objection to collecting the money that Johnson spoke of was that it was after the first of April; I don't recollect any other objection he spoke of."

*Question.*—" When Mr. Wolleshlare urged upon the heirs to have the notes transferred to themselves or to collect the money what, if anything, did he say as to being no longer responsible himself as surety upon Johnson's note ?"

*Answer.*—" As near as I can recollect he used language something like this or of similar import I should say—' The note is out and the money is where you can make it perfectly secure to yourselves, and I am determined to stand no longer on the note, and you must proceed to collect it.' I mean proceed to collect these notes; I mean the note on which Mr. Wolleshlare was security of course. In saying I meant these notes I referred to

the previous conversation as to the notes against Butz and others. I did not refer to the note then that Wolleshlare required the heirs to collect from Johnson; I didn't see any of these notes in the course of the conversation during the day. I heard Wolleshlare say to Everhard before that several times, that he did not think John Johnson perfectly secure. At those times he repeated the same request and that they should collect the money from John Johnson."

*Cross-examined.*—"Wolleshlare suggested to these heirs that they should take this note of Butz from Johnson's hands; he said he was ready to pay his own note at any time; there was no proposition made at that time as to William Johnston's note; William Johnson made a proposition to Everhard; I don't know whether it was that day or not, that if such an arrangement was entered into he wanted Everhard to take this note; can't say whether William Johnson was there that day or not; I may have testified when my deposition was taken last time that William Johnson was present that day; when Wolleshlare said that they must collect their money, that he at the same time proposed to go with them to Butz's; I don't think I swore so the last time I was examined; I swore that he proposed a plan by which they could get their money into their own hands, that they should take Butz's note from Johnson; I said William Johnson made the proposition to Everhard that he should take his note, but whether it was that day or not I can't say now; I can't tell the precise language that Wolleshlare used when he spoke of collecting the money; he told them to take those notes; this was one plan he proposed. The other was that they should have Johnson collect the money from Butz and hand it over to them; I do not say that he directed the parties to sue Mr. Johnson; I recollect Mr. Wolleshlare made the remark that he supposed Butz could pay the money at any time; he gave no directions to have Butz sued; I don't know that he gave any reasons for not suing Butz; I heard no directions given to have Butz or Johnson sued. The funeral expenses at the store were settled at that time; I think Johnson paid Everhard $12 for taking care of Mrs. Searles; I don't know that either the Butz or Johnson note were called for at the time of this conversation; I didn't see them; I do not recollect that Johnson said he had a year to settle in; I don't know that Wolleshlare said he, Wolleshlare, had no money at that time, I don't know, I may have said in my last deposition that William Johnston was by during a part of this conversation; I can't be definite about it; I stated in my last deposition that I thought I had no conversation with Everhard after this conversation with the heirs, but think now I did say something to Everhard about it afterwards; I don't recollect that any one but these parties spoken of were present at this conversation; I was absent

[Wolleshlare *v.* Searles *et al.*]

a part of the time, but don't recollect that I saw Esquire Huns-
berger there ; Everhard's wife was there ; can't say whether his
daughter was in that room ; Frederick Searles, Esther Searles,
Mr. Everhard were the heirs present; can't say whether they
were present all the time ; they were there most of the day."

*Re-examined.*—I don't know whether Esther Searles is a
married or single woman or what she is reputed to be in the
family."

The court below (MAXWELL, P. J.) instructed the jury that the
notice as proved by Jessie Wagner was not sufficient in law to
relieve the defendant from liability, and directed them to find for
plaintiffs, which was done.   Judgment having been entered on
this verdict, the defendant sued out this writ and assigned for
error the charge of the court as above stated.   There were several
other errors assigned, but they were not considered by the court.

*Reeder & Green*, for plaintiff in error.

*A. E. Brown*, for defendant in error.

The opinion of the court was delivered, May 6th 1863, by

LOWRIE, C. J.—By the law of the written contract, all the
makers of a promissory note are equally bound to the payee, and
he is under no duty to either of them.   It is only by way of
equity that he can be held to any duty to either of them.   This
happens when it clearly appears that one of them is surety for the
others, and warns the holder to proceed to collect the claim without
delay or he will hold himself discharged.   This warning does in
equity raise a duty on the part of the holder to the surety, and if it
be neglected to the injury of the surety he will be discharged.   The
proof of this warning is therefore the preliminary evidence that
is to raise the duty and introduce the evidence of its violation.

If the warning be not clearly proved, all further evidence *is*
good for nothing, and ought to be rejected.

It seems to us that the warning is not made out here.   The
witness very evidently had not a clear idea whether the warning
given applied to this note or to those held by Johnson ; and
surely warning, or the evidence of it, that requires a long and
tedious analysis to show its application to the note sued on, can-
not be regarded in equity as sufficient.   It, and the evidence of
it, ought to be so clear and distinct, that its meaning will strike
the mind of the hearer at once and without argument.   This does
not at all do so ; and argument in its favour only makes its suf-
ficiency less clear.   The court was right in declaring that this
preliminary proof was not made out.   We see no other question
in the cause that requires discussion by us, and no error to the
injury of the defendant below.

Judgment affirmed.